SEYFARTH SHAW LLP
Holger G. Besch (SBN 193362)
E-mail: hbesch@seyfarth.com
Timothy M. Fisher (SBN 272392)
E-mail: tfisher@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Respondent
COSTCO WHOLESALE CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

COSTCO WHOLESALE CORPORATION

Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 542

Respondent.

Case No. **'18CV1953 BEN BLM**

**DECLARATION OF JESSE SANCHEZ IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD**

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
601 SOUTH FIGUEROA STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 90017-5793

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
601 SOUTH FIGUEROA STREET, SUITE 3300
LOS ANGELES, CALIFORNIA, 90017-5793

**<u>DECLARATION OF JESSE SANCHEZ</u>**

I, Jesse Sanchez, declare as follows:

1.      I am the General Manager of Costco's Carlsbad warehouse in Southern California. I submit this Declaration in Support of Costco's Motion to Vacate Arbitration Award. I know the facts in this Declaration to be true based upon my personal knowledge.

2.      James Diaz was a forklift driver for Costco at the Carslbad warehouse. On November 5, 2017, Charles Harris ("Harris"), a Loss Prevention employee at my warehouse informed Keith Paget ("Paget"), Costco's Loss Prevention Manager that during the course of reviewing CCTV footage of the Return to Vendor ("RTV") Department, Harris observed several employees conducting suspicious activities that appeared to be drug related.

3.      Paget and I reviewed the CCTV tapes from November 3rd and 4th. At 2:45 p.m. on November 3rd, CCTV showed James Diaz ("Diaz"), one of my forklift drivers, entering the RTV department on his forklift and throwing Jeff Stock ("Stock"), an RTV employee, a small clear plastic bag containing a white substance. Stock was then observed on CCTV going to the restroom with the plastic bag and coming out two minutes later without the plastic bag being visible.

4.      Stock was also observed sampling the white powder in the plastic bag in the RTV department later the same day and putting the plastic bag in a box on the RTV shelf. At 11:55 a.m. on November 4th, Jeff Stinson ("Stinson"), another Costco employee, is observed on CCTV opening the box and taking the plastic bag.

5.      On November 10th, Sanchez and Paget interviewed Stinson and Stock, each of whom admitted to doing cocaine on the job and buying cocaine from Diaz four to five times. Stinson and Stock both stated that Diaz was considered the cocaine dealer for the building. Stinson and Stock both provided written statements on these points. (The statements provided by Stinson and Stock are attached hereto as Exhibit A.)

6.      On the same day, Paget and I interviewed Diaz in my office. Diaz denied all allegations of drug dealing and agreed to provide a written statement to that effect. Paget then informed Diaz that the Carlsbad police were on their way to the warehouse to assist with the investigation. Diaz requested to use the restroom and then returned to my office, but then proceeded to leave the warehouse when he was told that the Police would be arriving. I told Diaz he was still on the clock and was required to cooperate in Costco's investigation. However, Diaz clocked out in the middle of his shift and left the premises.

7.      The Police arrived shortly thereafter, took possession of the plastic bag with the white powder. Later, the Police informed us that the white powder was cocaine.

8.      Keith Paget completed his investigation report on November 15, 2017. (Paget's Investigation Report is attached hereto as Exhibit B.)

9.      On November 12, 2017, in accordance with the procedure set forth in Article IV of the Teamsters' Collective Bargaining Agreement ("CBA"), Assistant GM Scott Olson suspended Diaz at my direction pending review by my Vice President. The Corrective Consultation states in pertinent part: "James [Diaz] needs to understand the seriousness of this matter and the impact it has on the company. James is being placed on a 3 day unpaid disciplinary suspension. James will report to the Warehouse Manager on Thursday, 11/16/17 at 2:45 pm to discuss his future at Costco Wholesale." The Corrective Consultation cites two "major violations" of the CBA, specifically Major #9 (bringing narcotics into Company premises) and Major #24 (failing to cooperate in a Company investigation). Mr. Olson made it very clear to Diaz and his Union representative that Diaz's case would be under review by a Vice President and could lead to termination. (Diaz's Corrective Consultation is attached hereto as Exhibit C.)

10.     I had previously submitted a termination request to my Vice President Rich Wilcox on November 11, 2017, citing the Major Offenses that Diaz was guilty of. (The Employee Termination Request is attached hereto as Exhibit D.)

11.     On November 13, 2017, I was informed that my request to terminate Diaz had been approved. (See Exhibit D.) On November 16, 2017 I informed Diaz that his

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
601 SOUTH FIGUEROA STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 90017-5793

employment with Costco had been terminated.  (Diaz's Termination form is attached hereto as Exhibit E.)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of August, 2018, at San Diego, California.

_____
Jesse Sanchez

48465790v.1

# EXHIBIT A

JEFFREY LAWRENCE STOCK
WORK IN RTV. AT THE CARLSBAD COSTCO

I GIVE THIS STATEMENT TO KEITH
FAGET WHO I KNOW IS A LOSS PREVENTION
MGR.

I HAVE RECEIVED COCAINE DRUGS FROM
JIMMY 3 TIMES. STARTING IN
SEPTEMBER. THE 5TH? WAS TODAY
11-10. JIMMY BRINGS IT INTO THE MENS BATHROOM
AND PUTS IT IN THE BOOT. THE MONEY IS THEN LEFT IN THE BOOT
IT WAS A CASUAL CONVERSATION
BETWEEN JIMMY AND MYSELF
ABOUT IT.

JEFF AND I HAVE WORKED IN RTV
FOR 5 YEARS AND THIS IS THE
FIFTH → TIME WE HAVE HAD A SHARE OF DRUGS.
THE 3RD WAS THE TIME I LEFT IT IN THE WINE OPENER
IT WAS A BIG MISTAKE THAT WE WILL
REGRET.
$300 TOTAL

I HAVE BEEN DRINKING DURING WORK FOR A YEAR
THE BEERS THAT WE TRASH I SNEAK SOMETIMES.
I WOULD HAVE THEM IN THE BATHROOM.

# COSTCO WHOLESALE
## LOSS PREVENTION REPORT

I WOULD PUT THE BEER IN MY SHORTS
AND CARRY TO THE BATHROOM. POCKET OR
WAISTBAND.

I HANDED OVER THE COCAINE TODAY 11-10-17
IT WAS A 1/2 GRAM HANDED IT TO KEITH PAGET. IN THE
JEFF STOCK SAME BAG

_[signature]_

11-10-17

599121

I HAVE READ THE STATEMENT AND ITS TRUE
TO THE BEST OF MY KNOWLEDGE.

_[signature]_ 11-10-17

# COSTCO WHOLESALE
## LOSS PREVENTION REPORT

Stinson's statement.

Jeffery Scott Stinson      RTV _

I give this statement to Keith Paget
who I know is a lost pervention.
I bought cocaine from Jimmy Diaz
about 5 times and have split it
with Jeff slick. Sept thru present.
purchased it at work. He would put it
some place and I would pick it up.
I came in at 2. picked up a 1 gram
from Jimmy Hidden in some merchandise.
I took it to the bath room Split it
with Jeff. I did my share in the bathroom
and then went back to work. I gave
Jimmy the money on the Doc. Jeff payed
me his share of the money and that was
it.

Read my Statement -true & Current
is the best of my knowladge.
JS     1/10/17

# EXHIBIT B

# COSTCO WHOLESALE
## LOSS PREVENTION REPORT

| | |
|---|---|
| **DATE:** | **NOVEMBER 15, 2017** |
| **TO:** | **CENTRAL OPERATIONS** |
| **CC:** | **DENNIS ZOOK**    **RICH WILCOX** |
| | **STEVEN DEAN**    **RICHARD ARRIOLA** |
| | **JEANNE ROSOLINO**    **JESSE SANCHEZ** |
| **FROM:** | **KEITH PAGET, LOSS PREVENTION MGR.** |
| **LOCATION:** | **CARLSBAD #462** |
| **RE:** | **INTERNAL INVESTIGATION** |
| | *Jeff Stock, Emp. # 599121 - Jeff Stinson, Emp. # 115608* |
| | *James Diaz, Emp. # 519020* |

This investigation was predicated on information provided by management at the Carlsbad Costco warehouse concerning three employees in violation of Costco's drug and alcohol policy.

On November 5, 2017 Charles Harris, Loss Prevention employee at the Carlsbad Costco, informed Paget that he was asked by management to review video footage for the RTV department. Harris said that he observed multiple employees involved in suspicious activities that appeared to be drug related.

On November 3, 2017 at about 2:45 P.M, Jeff Stock was on his cell phone while sitting on an RTV shelf. Forklift driver James Diaz entered the RTV department and threw Jeff Stock a small plastic baggie. Diaz immediately left the RTV department. Stock then proceeded to the men's restroom located in the receiving area and was inside the restroom for approximately two minutes. When Stock returned to the RTV department the small plastic baggie was no longer visible.

# COSTCO WHOLESALE
## LOSS PREVENTION REPORT

Harris said that at approximately 3:40 P.M, Stock approached the RTV desk carrying the small plastic baggie in his hand. Stock then selected a box containing an electric corkscrew from the RTV shelf, and set it on the desk. Stock opened the plastic baggie and placed his finger inside the baggie and appeared to scoop something with his finger. Stock immediately put the same finger up his nose for a brief moment. Stock then used his right hand to wipe something off the desk. Stock placed the small plastic baggie inside the corkscrew box and returned the box back on the shelf in the RTV department.

On November 4, 2017 at about 11:55 A.M, Jeff Stinson entered the RTV department and selected the same corkscrew box from the shelf. Stinson opened the box and retrieved the same small plastic baggie from inside the box and returned the box to the shelf. Stinson then exited the RTV department with the plastic baggie.

On November 9, 2017 Harris was alerted by management that an empty beer can was discovered in the trash can inside the men's restroom in the receiving department. It was also determined that a can of beer was missing from a case in the RTV department.

On November 10, 2017, Stock, while working his shift in the RTV department, was observed concealing beer within his clothing on numerous occasions. Stock would proceed to the restrooms located in the receiving department with the concealed beer. Management and Loss Prevention, who were monitoring the situation via a receiving dock camera, removed the empty beer cans from the trash can in the restroom after each of Stock's visits to the restroom. Stock's activities were ongoing throughout his shift and involved a total of six stolen beers.

On November 10, 2017 at approximately 3:00 P.M, Paget, in the presence of Carlsbad Warehouse Manager Jesse Sanchez, met with Stock. Paget informed Stock that he was a Loss Prevention Manager for Costco and was investigating allegations that employees were in violation of Costco's drug and alcohol policy.

Paget explained to Stock that as a Costco employee he was obligated to cooperate in a company investigation. Paget pointed out that if he was dishonest during the investigation it could be grounds for termination.

During the interview, Stock admitted that he consumed the six stolen beers in question from the RTV department. Stock also admitted that he had used cocaine in the RTV department on numerous occasions. Stock said that the majority of the time, he split the purchase of a gram of cocaine with his co-worker Jeff Stinson. Stock said that they were both purchasing cocaine from another co-worker, forklift driver James Diaz. Stock said that he had personally purchased cocaine from Diaz on Costco property at least four or five times. Stock said earlier in the day, Stinson purchased a gram of cocaine from Diaz, which they both split. Stock produced a plastic baggie containing a white substance from his wallet and claimed that it was his half of the cocaine from the earlier transaction with Diaz. Stock was asked if he would provide a written statement about the situation and he agreed. Stock was placed on a three day unpaid suspension pending further investigation.

Next, Paget, in the presence of Sanchez, met with Jeff Stinson. Paget informed Stinson that he was a Loss Prevention Manager for Costco and was investigating allegations that employees were in violation of Costco's drug and alcohol policy. Paget explained to Stinson that as a Costco employee he was obligated to cooperate in a company investigation. Paget pointed out that if he was dishonest during the investigation it could be grounds for termination.

During the interview, Stinson admitted to using cocaine on company property during his work shift on several occasions. Stinson stated that earlier in the day, he purchased a gram of cocaine from forklift driver James Diaz for $60.00. Stinson said that the cocaine transaction took place in the receiving area by the trash compactor. Stinson said that he immediately split the gram of cocaine with his co-worker Jeff Stock, which he has done on numerous occasions in the past.

Stinson said that he had purchased cocaine from Diaz on Costco property several times in the past. Stinson said it was widely known that Diaz was the drug supplier at the warehouse. Paget asked Stinson if he would provide a written statement about the situation, and he agreed (see attached statement). Stinson produced a small baggie with a white substance, which he claimed was his half gram of cocaine from the earlier transaction with Diaz. Stinson was placed on a three day unpaid suspension pending further investigation.

Next, Paget, in the presence of Sanchez, met with James Diaz. Paget informed Diaz that he was a Loss Prevention Manager for Costco and was investigating allegations that employees were in violation of Costco's drug and alcohol policy. Paget explained to Diaz that as a Costco employee he was obligated to cooperate in a company investigation. Paget pointed out that if he was dishonest during the investigation it could be grounds for termination.

Paget told Diaz that he had been implicated by two other employees selling cocaine at the warehouse. Paget showed Diaz the cocaine recovered in the earlier interviews with Stock and Stinson. Diaz adamantly denied the allegations and offered to take drug test. Paget asked Diaz if he would provide a written statement to the effect and he agreed. See attached statement.

Paget explained to Diaz that because they recovered illegal drugs during the investigation, the Carlsbad Police Department was responding to the warehouse to assist with the investigation. Paget left the office for a moment, and was informed that Diaz requested to use the restroom. Diaz was accompanied to the restroom by management.

Diaz returned to the manager's office where he asked Paget the status of the investigation. Paget explained that they were waiting for direction from the Regional Vice President as well as for the police department to arrive. Paget again left the office for a moment, and during Paget's absence Diaz exited the office.

Diaz told Sanchez that he was leaving the warehouse and no one could stop him. Sanchez told Diaz that he was required to cooperate in the investigation, and that he was still on the clock with several hours remaining in work shift. Diaz refused to remain and departed the warehouse.

Paget caught up with Diaz as he exited the warehouse and requested that he return to the office and wait for the police department to arrive. Daiz again told Paget that he was not involved in drug transactions at the warehouse, and he was leaving the premises. Paget told Diaz that it wouldn't be much longer, because a police officer had been dispatched to the warehouse and was in route.

Paget told Diaz if the allegations were false, he should remain at the warehouse to explain to the police that he had been falsely accused. Diaz told Paget that he had already clocked out and that we could not hold him against his will. Diaz immediately drove off the property prior to the police officer's arrival.

Officers interviewed both Stock and Stinson concerning the illegal drug activity at the Carlsbad Costco. Stock and Stinson, in their independent interviews, implicated Diaz as the individual selling them cocaine at the warehouse. The officers took possession of the cocaine produced by Stock and Stinson. Paget was later notified by the police officer that the white substance tested positive for cocaine.

## ATTACHMENTS:

Stock's statement.

Stinson's statement

Stock's statement.

# COSTCO WHOLESALE
## LOSS PREVENTION REPORT

JEFFREY LAWRENCE STOCK
WORK IN RTV. AT THE CARLSBAD COSTCO

I GIVE THIS STATEMENT TO KEITH
PAGET WHO I KNOW IS A LOSS PREVENTION
MGR.

I HAVE RECEIVED COCAINE DRUGS FROM
JIMMY 8 TIMES. STARTING IN
SEPTEMBER. THE 8TH WAS TODAY
11-10. JIMMY BRINGS IT INTO THE MENS BATHROOM
AND PUTS IT IN THE BOOT. THE MONEY IS THEN LEFT IN THE BOOT
IT WAS A CASUAL CONVERSATION
BETWEEN JIMMY AND MYSELF
ABOUT IT.

JEFF AND I HAVE WORKED IN RTV
FOR 5 YEARS AND THIS IS THE
FIFTH → TIME WE HAVE HAD A SHARE OF DRUGS.
THE 3RD WAS THE TIME I LEFT IT IN THE WINE OPENER
IT WAS A BIG MISTAKE THAT WE WILL
REGRET.
$300 TOTAL

I HAVE BEEN DRINKING DURING WORK FOR A YEAR
THE BEERS THAT WE TRASH I SNEAK SOMETIMES.
I WOULD HAVE THEM IN THE BATHROOM.

# COSTCO WHOLESALE
## LOSS PREVENTION REPORT

I WOULD PUT THE BEER IN MY SHORTS
AND CARRY TO THE BATHROOM. POCKET OR
WAIST BAND.

I HANDED OVER THE COCAINE TODAY 11-10-17
IT WAS A 1/2 GRAM HANDED IT TO KEITH PAGET. IN THE
JEFF STOCK SAME BAG

11-10-17

599121

I HAVE READ THE STATEMENT AND ITS TRUE
TO THE BEST OF MY KNOWLEDGE.

11-10-17

# COSTCO WHOLESALE
## LOSS PREVENTION REPORT

Stinson's statement.

Jeffery Scott Stinson    RTV —

I gve this statement to Keith Paget
who I know is a lost pervention.
I bought cocaine from Jimmy Diaz
about 5 times and have split it
with Jeff stuck. Sept thru present.
purchased it at work. He would put it
some place and I would pick it up.
I came in at 2. picked up a 1 gram
from Jimmy Hidden in some merchandise.
I took it to the bath room split it
with Jeff. I did my share in the bathroom
and then went back to work. I gave
Jimmy the money on the Doc. Jeff payed
me his share of the money and that was
it.

Read my statement -true & current
is the best of my knowledge.
JG Sm 1/10/17

# EXHIBIT C



## EMPLOYEE CORRECTIVE CONSULTATION

**Employee's Name:** James Diaz     **Emp#:** 519020    **Dept:** 83-50   **Location:** 463

**Employee's Classification:**   ☑ Full time     ☐ Part time     ☑ Union     ☐ Non-union

**Type Of Consultation: ( please check )**    Verbal ○    Written I ○    Written II ◉

### *** PRIOR CONSULTATIONS TO THIS EMPLOYEE ***

| FIRST DATE | SECOND DATE | THIRD DATE |
|---|---|---|
| Related ☐ Yes ☐ No | Related ☐ Yes ☐ No | Related ☐ Yes ☐ No |

The above employee was given a corrective consultation at 12:5pm on 11/12/17 for the following reasons.

*** 9. Hand type offense for alcohol/drug use. Definition is too long to fit in this space. ***

Violation of Costco's Drug and Alcohol Free Workplace.
Major #9; Bringing Liquor, Narcotics, or dangerous drugs into the Company premises or consuming liquor or dangerous drugs on company premises or reporting for duty under the influence of liquor, narcotics, or dangerous drug
Major #24: Failure to fully cooperate in a Company Investigation

**Discussion and Action Taken:**

James needs to understand the seriousness of this matter and the impact it has on the company. James is being placed on a 3 day unpaid disciplinary suspension. James will report to the Warehouse Manager on Thursday, 11/16/17 at 2:45pm to discuss his future at Costco Wholesale.

It is understood that failure to correct the above may result in further disciplinary action, up to and including termination.

Were the contents of this report read to employee?   ○ Yes   ○ No

| | | Date | |
|---|---|---|---|
| Supervisor's Signature | | Date | 11/12/17 |
| Employee's Signature | | Date | 11/12/17 |
| Witness Signature | | Date | 11.12.17 |
| Whse. Mgr. Signature | | Date | 11.13.17 |

**Dear Employee:**

It is never a pleasant experience to receive a corrective consultation. We want you to know that we value our employees and use corrective consultations only as a means to clearly communicate to you that your job performance is in some way not adequate or that you have violated a Costco rule or procedure. By issuing this consultation, we want to make you aware of specific improvements which are required and to give you any assistance necessary. We hope that you will feel that overall this was a positive occurrence that will help you fulfill your own personal career goal.

**EMPLOYEE:** Please initial that you have read      Date 11.12.17

Please use this section for your comments.

# EXHIBIT D

**EMPLOYEE TERMINATION REQUEST**          **DATE: November 11 2017**

NAME OF PERSON COMPLETING REQUEST:   Jesse Sanchez

**EMPLOYEE NAME: James Diaz**      **POSITION:  FT Forklift Driver**

DATE OF HIRE:      5/17/2007        WAREHOUSE:     **CARLSBAD #462**

PREVIOUS POSITIONS HELD: **N/A**

POLICY VIOLATION: *(attach additional paperwork if needed)*
Violation of Costco Drug and Alcohol Free Workplace
#9 Bringing Liquor, Narcotics, or dangerous drugs into the Company premises or consuming liquor or
dangerous drugs on company premises or reporting for duty under the influence of liquor , narcotics, or
dangerous drugs.
#24 Failure to fully cooperate in a Company Investigation.

**FINAL DISPOSITION:**

WAREHOUSE MANAGER APPROVAL:

VICE PRESIDENT APPROVAL:                                    11/15/17

*(2YR or more employment)*
SENIOR VICE PRESIDENT APPROVAL:                   11/13/17

*(5YR or more employment)*
EXECUTIVE VICE PRESIDENT APPROVAL:

# EXHIBIT E



**TERMINATION / RESIGNATION FORM**

Employee Name: <u>James Diaz</u>

Employee #: <u>519020</u>     Hire Date: <u>05/17/2007</u>

Location Name & #: <u>Carlsbad 462</u>

Resignation Notice Given:

Effective Date: <u>11/16/2017</u>

Last Day Worked: <u>11/12/2017</u>

Termination/Resignation Reason(s):

For good and sufficient cause, including but not limited to, the following violation(s) of company policy:
-Violation of DFWP
-Non-coop in Investigation

Details:
Violation of Costco's Drug Alcohol Free Workplace Policy.
Major # 9 "Bringing liquor, narcotics or dangerous drugs into the Company premises or consuming liquor or using narcotics or dangerous drugs on Company premises or reporting for duty under the influence of liquor, narcotics or dangerous drugs."
Major # 24 "Failure to fully cooperate in a Company investigation."

I hereby certify that this Termination/Resignation form has been reviewed with me and that I received a copy.

<u>James Diaz</u>
**Employee Name**

<u>(signature)</u>
Employee Signature

<u>11·16·17</u>
Date

If you disagree with any information noted in this document, you may submit a written statement explaining your viewpoint.

Notes: - Benefits participants will receive information on post-employment benefits through the mail.
- Access to the Care Network (877-578-0528) is available for 60 days after leaving the company.
- 401(k) participants will be mailed appropriate paperwork from T. Rowe Price.

<u>L. Stuart(?)</u>
**Manager Name**

<u>(signature)</u>
Manager Signature

<u>11·6·17</u>
Date

<u>Scott Olson</u>
**Witness Name**

<u>(signature)</u>
Witness Signature

<u>11·16·17</u>
Date

For Office Use Only
Manual Check Request Form completed & check received: ___ Y ___ N

*Emergency Checks Only*
Remittance advice signed by employee & check written: X Y ___ N

Term/Res copy to employee X Y ___ N

*Resignation Only*
15+ year employee has been recognized by upper management: ___ Y ___ N

Badge returned/deactivated X Y ___ N