SEYFARTH SHAW LLP
Holger G. Besch (SBN 193362)
E-mail: hbesch@seyfarth.com
Timothy M. Fisher (SBN 272392)
E-mail: tfisher@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Respondent
COSTCO WHOLESALE CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

COSTCO WHOLESALE
CORPORATION

            Petitioner,

    v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL NO. 542

            Respondent.

Case No. **'18 CV1953 BEN BLM**

**DECLARATION OF RICHARD
ARRIOLA IN SUPPORT OF
MOTION TO VACATE
ARBITRATION AWARD**

**DECLARATION OF RICHARD ARRIOLA**

# DECLARATION OF RICHARD ARRIOLA

I, Richard Arriola, declare as follows:

1. I am the Director of Labor Relations for Costco Wholesale Corporation ("Costco"). I submit this Declaration in Support of Costco's Motion to Vacate Arbitration Award. I know the facts in this Declaration to be true based upon my personal knowledge.

2. Costco Wholesale Corp. operates retail/wholesale warehouses nationwide. It has been recognized as one of the most employee-friendly companies in the United States. Costco does business in 45 States and is engaged in interstate commerce. Costco has 38 unionized warehouses in California covered by a collective bargaining agreement between Costco and the California Teamsters, covering the period February 1, 2016 and January 31, 2019 (the "CBA"). The applicable portions of the CBA are attached hereto as Exhibit A.

3. Defendant Teamsters Local 542 (the "Union" or "Defendant") is one of six Teamster locals that represent Costco employees covered by the CBA. The Union has an office at 4666 Mission Gorge Place, San Diego, CA 92120 and represents Costco employees at the Carlsbad warehouse.

4. The CBA lists Company Rules and Regulations, divided into Minor Offenses (where progressive discipline is normally used) and Major Offenses (where "discharge is the normal action taken"). See Exhibit A, pages 107-111. Major Offense No. 9 makes clear that possession of narcotics on Costco premises is a terminable offense. Also, under Article IV (Discharge), sufficient and proper cause for discharging an employee specifically includes "possession of or working under the influence of illegal/dangerous drugs/substances and/or narcotics." See Exhibit A pages 6-7.

5. Article IV of the CBA, as well as Costco policy, requires that all terminations be reviewed by either the Senior Vice President or higher executive, depending on the employee's seniority. See Exhibit A, Art. IV, page 7. As a result, Costco has the contractual right to suspend employees pending investigation for three

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
601 SOUTH FIGUEROA STREET, SUITE 3300
LOS ANGELES, CALIFORNIA, 90017-5793

work days "following the employee's notification of the suspension for violation of a major offense which would normally result in immediate termination." See Exhibit A, Art. IV at page 9.

6.      As Director of Labor Relations, I was made aware of a grievance filed by the Union regarding the termination of James Diaz ("Diaz"), a forklift driver at the Carlsbad warehouse. The Grievance Report cited violations of "Article 4 and all that may apply." The Grievance Report does not mention double jeopardy. The Union's Grievance Report, dated November 16, 2017 is attached hereto as Exhibit B.

7.      The arbitration was conducted on May 2, 2018 before the "Board of Adjustment," as set forth in the CBA. Specifically, two Union and two Costco representatives, with panel arbitrator Dave Hart as the Chairman of the Board of Adjustment.

8.      Article VI of the CBA establishes the dispute resolution mechanism that authorizes resolution of disputes by a Board of Adjustment ("Board"), chaired by a neutral arbitrator. See Exhibit A, Art. IV at pages 10-17. The procedural rules for such proceedings are "set forth in the Costco/Teamster[s] Board of Adjustment Procedures." See Exhibit A, Art. IV at page 15.

9.      The CBA itself expressly limits the powers of the Board: the Board may not "add to, subtract from, modify, alter or change any of the terms of this Agreement or any other terms made supplemental hereto, or to arbitrate any matter not specifically provided for in this Agreement or arbitrate any new provision into this Agreement." The CBA further states: "The Board's authority is to interpret and apply provisions of the Agreement. The Board shall be bound entirely by the records presented to it in the form of evidence and argument." See Exhibit A, Art. IV at page 14.

10.      Additionally, the Costco/Teamsters Board of Adjustment Procedures provide that "[t]he Panel shall have no greater authority then that granted an Arbitrator pursuant to Article VI of the Collective Bargaining Agreement." The Costco/Teamsters Board of Adjustment Procedures are attached hereto as Exhibit C.

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
601 SOUTH FIGUEROA STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 90017-5793

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
601 SOUTH FIGUEROA STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 900075790

11.     The Board of Adjustment procedures are very specific with regard to the Arbitrator's role in the proceedings.  Article IV of the Board procedures requires the Arbitrator to "complete, and all Panel Members to sign the Board of Adjustment Decision.  A copy of the completed Board of Adjustment form shall be provided to both parties and Local #542, (the keeper of the records), along with copies of documentation pertaining to the case."  Instead, in the case at bar, the parties received a three sentence email.

12.     The limitations imposed on an arbitrator under Article VI of the CBA include that an arbitrator may not "[a]lter, change, modify, or add to or subtract from this Agreement or any provisions thereof," nor "[i]mpose on either party hereto a limitation or obligation not set forth in an express provision of this Agreement."  See Exhibit A, Art. IV at page 16.

13.     I was present at the arbitration.  The Union's only argument at the hearing was "double jeopardy" based on the language in Diaz's suspension letter, with the Union conceding Diaz's underlying major violations of cocaine dealing and failing to cooperate in the Company investigation.  Costco argued, among other things, that given the extremely serious nature of the underlying major offenses, Diaz could not have had any expectation whatsoever that a three-day suspension was the only discipline he would get, particularly because Costco was following the CBA and consulting with the Vice President, as well as using its contractual right to issue a 3-day suspension while the matter was reviewed by upper management.

14.     Fletcher Evans, Costco's Labor Relations Representative and our representative at the hearing, also tried to submit testimony and evidence concerning the underlying drug offenses to demonstrate the fact that Diaz could not possibly have thought that a 3-day suspension was the only discipline that would be imposed.  The arbitrator refused to hear anything other than minimal evidence that did not directly relate to the issue of double jeopardy.

3

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
601 SOUTH FIGUEROA STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 90017-5793

15.     Upon information and belief, on two occasions, once before and once after the close of the hearing, Arbitrator Hart met *ex parte* with Diaz and Union representative Mike West.  We understand that Arbitrator Hart encouraged Diaz to settle the case, suggesting that Costco would pay him $6,000. Costco had never offered or authorized such a settlement.  I only found out about the unauthorized monetary offer that occurred during one of these *ex parte* discussions weeks later at meeting I attended with Union representative Mike West on a different matter.

16.     Because the respective Costco and Union representatives on the Board of Adjustment were split equally on the grievance, the decision on Diaz's case fell to Arbitrator Hart.  On May 21, 2018, Arbitrator Hart sent an email (attached hereto as Exhibit D) to both the Union and Costco which stated in full as follows:

> The above named Grievant prevails in his grievance. The Union's arguments as to double jeopardy were correct.  Union remedy is adopted.
>
> So that I can look at myself in the mirror, my resignation is effective today.
>
> David B. Hart.

17.     In apparent recognition that the arbitrator had not executed his duties under the collective bargaining agreement, on May 23, 2018, the Union's representative, Mike West, emailed Arbitrator Hart and requested that he return a completed Board of Adjustment Decision form to the parties.  A copy of Mike West's email to Arbitrator Hart is attached hereto as Exhibit E.

18.     Arbitrator Hart never responded to West's email requesting an award and Arbitrator Hart has never returned a completed Board of Adjustment Decision form. Costco does not have a copy of the Board of Adjustment Decision form that was provided to Arbitrator Hart at the commencement of the arbitration. That form would include the Union's requested remedy.  Accordingly, Costco does not know specifically what remedy the Union requested, as referenced in Arbitrator Hart's email to the parties.

The Union's grievance from November 2017 only requested "go back to work" as a remedy. See Exhibit B.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of August, 2018, at San Diego, California.

Richard Arriola

# EXHIBIT A

# AGREEMENT BETWEEN





# CALIFORNIA TEAMSTERS



Local 150

Local 166

Local 542

Local 572

Local 853

Local 986

## February 1, 2016 through January 31, 2019

## ARTICLE III - AUTHORIZATION FOR DEDUCTION

**(a)** <u>Initiation and Monthly Dues</u>

Employer agrees to deduct initiation fees and dues from the wages of employees in the bargaining unit who provide the Employer with a voluntary written authorization which shall be irrevocable for a period of one (1) year, or until the expiration date of this Agreement, or until the employee is no longer eligible for Union membership. Initiation fees will be deducted in two (2) consecutive monthly payroll deductions. Teamsters Local 542/166 shall decide the initiation fee and dues structures for the lifetime of this Agreement.

**(b)** <u>Monthly Deductions</u>

Such deductions shall be made by the Employer from wages of employees for their first (1st) pay period in the calendar month for the coming month, and will be transmitted to the Union no later than the twentieth (20th) of the month after such deductions are made, unless such deductions are unable to be made because of equipment breakdown or acts of God.

**(c)** <u>Employee Authorization</u>

No deductions will be made from the wages of any employee until the Employer has received a signed copy of the voluntary written authorization for such deductions.

**(d)** <u>Union Indemnification</u>

The Union hereby indemnifies and defends the Employer and holds it harmless against any and all suits, claims, demands and liabilities that may arise out of, or by reason of, any action that shall be taken by the Employer for the purpose of complying with the foregoing provisions of this Article, or in reliance on any list or certificate which shall have been furnished to the Employer under any of such provisions.

## ARTICLE IV - DISCHARGE

**(a)** <u>Right to Discharge</u>

It is mutually agreed that the Employer reserves the right to discharge any employee for sufficient and proper cause. Sufficient and proper cause for discharging an employee shall include but is not limited to theft, gross insubordination, intoxication, possession of or working

under the influence of illegal/dangerous drugs/substances and/or narcotics, in the employee's system above the minimum levels determined by a N.I.D.A. or S.A.M.S.H.A. approved facility corresponding to D.O.T. standards, refusal or continued failure to observe posted or issued Company rules or procedures, or actions endangering the safety of others. It is agreed that all Company rules and procedures, the breach of which will be cause for disciplinary action, will be posted and sent to the Union simultaneously.

Employees past their probationary period who are discharged for offenses other than the above shall have had a prior verbal corrective consultation on record and a written corrective consultation, or two (2) written corrective consultations of a related or similar offense, with copies sent to the Union.

Additionally, employees with less than two (2) years of service may be discharged for having a total of four (4) corrective consultations in a six (6) month period, even if unrelated, excluding those for absenteeism.

Employees with two (2) or more years of service, but less than four (4) years of service, may be discharged for having a total of five (5) corrective consultations, in a six (6) month period, even if unrelated, excluding those for absenteeism.

Prior to terminating an individual who has been employed two or more years, the circumstances must be reviewed with a Senior Vice President or above. Prior to terminating the employment of an individual who has been employed five or more years, the circumstances must be reviewed with an Executive Vice President or above.

Said corrective consultation notices must provide a space on them for the employee to write in their views on the offense.

The employee shall be required to sign such notice, but such signing shall not constitute agreement with the contents of the corrective consultation notice. The Employer reserves the right to issue unpaid disciplinary suspensions for up to ten (10) working days for violations that would normally result in termination, in extraordinary circumstances.

Employees who have received three (3) unpaid disciplinary suspensions in a twelve (12) month period may be discharged. This does not include investigatory suspensions.

Employee corrective consultations shall be effective for a period of time not to exceed six (6) months, and will be removed from their personnel files except for:

1. Records of disciplinary suspensions for any major offense which will remain in their file for a period of two (2) years. However, exclusion from job postings will only be for a period of six (6) months.

2. Active consultations for absenteeism. Attendance consultations shall be considered active when all noted instances are within 12 months from the first noted instance, unless that time is extended per provision 3 below.

3. The six (6) months, two (2) year, and the active twelve (12) month period for absenteeism consultations, and the calendar window used for the calculation of discipline shall be extended for any leaves of absence, except where prohibited by state or federal regulation or statute.

Excessive absenteeism is absence from work for any reason for nine (9) occasions in any twelve (12) month period and will be subject to progressive discipline and/or discharge if there is no improvement. Vacations, holidays, scheduled paid sick / personal leave, funeral leave and jury duty shall not be considered. Unscheduled paid sick / personal leave is included for purposes of calculating instances of absence.

The Company may take separate disciplinary action for patterns of absenteeism and abuse of the attendance program. Patterns of absenteeism is defined as instances of absenteeism in conjunction with scheduled time off, weekends, or any other regular reoccurring events of four (4) times within a six (6) month period.

Absences caused by Workers Compensation injuries and treatment, or F.M.L.A., C.F.R.A., A.D.A. injuries and treatment where documented by a physician's note for each occasion, or S.D.I. that is used to extend F.M.L.A., C.F.R.A., or A.D.A., will also not be considered.

An occasion will be any length of absence of more than fifty percent (50%) of the employees scheduled work shift. Employees who work more than fifty percent (50%) of their scheduled shift and then leave due to illness other than Workers' Compensation shall only be charged with half (½) an occasion of absence.

The Employer shall have the option to give an Employee an immediate investigatory suspension for a maximum of three (3) of the employee's scheduled work days, not including the day the investigatory suspension is issued, (not to exceed seven (7) calendar days) following the employee's notification of the suspension for violation of a major offense which would normally result in immediate termination as described in the Company Rules and Regulations, until the Employer has decided what final action is to be taken as a result of the violation.

If an employee is returned to work after an investigatory suspension, the employee shall be paid for the lost wages and all records of that event shall be removed from the employee's personnel file.

All employees shall be treated equally in respect to corrective consultations and there shall be no preferential treatment.

A copy of all employee corrective consultations, suspensions and terminations must be given to the employee at the time of issuance, and a copy must be mailed to the Union within seven (7) calendar days.

A corrective consultation must be given within three (3) scheduled working days, from the time any Manager acquires knowledge of the offense, not including the day of the offense, excluding Saturday and Sunday. Failure on behalf of the Employer to process and/or issue such consultation within the time limits as prescribed within shall void the consultation.

A corrective consultation shall have no force or effect after six (6) months from the date on which it was issued (except absenteeism or records of disciplinary suspensions for major offenses), and the remaining corrective consultations shall thereupon be reduced accordingly.

**(b)** **Probationary Period**

The Employer shall have the right to discharge without cause any employee during the first ninety (90) calendar days of employment if said employee is not satisfactory to the Employer. Such discharge shall not be subject to Settlement of Disputes, Article VI.

Should a probationary employee have a break in service for any reason excused by management for three (3) or more consecutive work days, the remainder of the probationary period will commence following the employees' return to work to their original hire position.

## ARTICLE V - NO REDUCTION

The Employer agrees that no Union member employee who prior to the date of the signing of this Agreement was receiving more than the hourly pay rate designated in the Agreement for the class of work in which they were engaged, shall suffer a reduction in the hourly wage rate through the operation of or because of adoption of this Agreement.

Any employee receiving a higher rate of pay or conditions in excess of this Agreement will suffer no loss in monetary increases or conditions through the signing of this Agreement. The increases for such employees will be the same percentage increase as that received by the top bracket of employees of the same classification. This Article shall apply only to a new unit that may be covered by all provisions of this Agreement.

## ARTICLE VI - SETTLEMENT OF DISPUTES

**(a)** **Exclusive Remedy**

The grievance procedure provided herein shall be the exclusive means, except as limited by law, for the disposition of all grievances; and there shall be no strike, lockout, picketing or cessation of work during the term of this Agreement, except that this limitation shall not be

binding upon either party hereto if the other party refuses or fails to abide by an arbitration award which has become final, unless such award exceeds the limitations outlined in this Agreement.

**(b)** **Definitions**

The term "grievance" shall mean any dispute or difference between the Employer and the Union concerning the application or interpretation of any provision of this Agreement.

**(c)** **Bench Decision**

If the nature of the discipline is such that no question of contract interpretation is involved, the Arbitrator so selected may be instructed by mutual agreement of the parties to hear evidence without transcript or the filing of briefs and to issue their decision from the bench, with an opinion, if requested by either party, to be subsequently prepared. It is recognized that certain cases involving questions of contract interpretation may require a transcript, briefs, and the preparation of written awards and opinion. Either party may choose this bench decision procedure, except that mutual agreement of the parties is required for this procedure to apply.

**(d)** **Procedure**

It is understood that the application of the grievance procedure does not permit the Union to impede or stop any employee from working or to interfere with any employee's work, without first having obtained the specific approval of the Supervisor or Manager who supervises the employee(s) involved. All grievances shall be handled in the following manner:

**Step 1:**

**(a)** All grievances, except for wage claims or discharge, shall be raised within fourteen (14) calendar days of their occurrence.

**(b)** Discharge grievances must be raised within seven (7) calendar days of receipt of notice by the Union or the employee, reduced to writing in the manner outlined herein, and submitted directly to Step 2.

(c)     In the case of a grievance for an alleged discrepancy in wages, holiday pay, paid sick / personal leave or vacation pay, for hours actually worked, guaranteed or benefits accrued, after the discovery thereof, any monetary adjustment or award shall not be retroactive for more than ninety (90) calendar days from the date of the filing of the grievance in writing. The matter should first be taken up orally between the Supervisor and the aggrieved employee.

(d)     If the grievance cannot be settled by the immediate Supervisor the employee shall then attempt to settle the problem with the Warehouse Manager utilizing the Union Steward, if desired.  If the matter is still not settled, the employee should request the Union to assist them and proceed with the grievance procedure.

If the matter is not satisfactorily adjusted in Step 1, then it is to be reduced to writing, specifying the nature of the grievance, the provisions of the contract relied upon, the identity of the individuals involved, if any, and the relief requested.

### Step 2:

(a)     The written grievance shall then be submitted by the Union's Business Representative to Location Management within five (5) calendar days after being raised in Step 1 for the purpose of resolving the dispute.  If the written grievance is not settled between the parties, the Location Manager shall notify the Union, in writing, of the Company's position not later than five (5) calendar days after the parties met to discuss said grievance.

(b)     In the event the parties are unable to resolve the grievance, then the matter may be reviewed by the Secretary-Treasurer of the Union or said designee and the Corporate Labor Relations Representative of the Employer or their designated Representatives within fifteen (15) calendar days after the receipt of the Employer answer.

(c)     In the event that a satisfactory settlement is not reached within thirty-one (31) calendar days after being raised in Step 2: (a), either party may request, in writing, that the grievance be referred to a Grievance Panel comprised of two (2) persons designated by the Employer and two (2) persons designated by the Union, none of whom shall be directly involved in the

grievance and a neutral Arbitrator who shall hear the grievance and render a decision in accordance with the Costco/Teamsters Board of Adjustment Rules and Procedures. In the event that the two by two (2 X 2) panel cannot come to a majority decision, the Arbitrator shall cast a vote to break the deadlock.

### Step 3: Board of Adjustment:

**(a)** There shall be no grievances presented to the Board of Adjustment (hereinafter the Board) until all steps of the grievance procedure have been utilized. All such grievances shall be considered settled and not subject to the Board unless either party (the Union or the Company) first serves written notice of intention to move the issue to the Board upon the other party during the first ten (10) calendar days after the decision in Step 2 (b) of the grievance procedure.

Each of the parties shall, within ten (10) calendar days after the execution Agreement appoint its regular Representative and sufficient alternates and immediately notify the other party in writing of the name of each Representative appointed.

**(b)** **Selection of the Chairperson**

The Board of Adjustment Chairperson shall be selected by the regular members designated in accordance with the above. Each side, Union members and Company members, shall nominate five (5) candidates for Chairperson of the Adjustment Board. From the list of ten (10) candidates, the Union and the Company members of the Joint Adjustment Board shall select a total of five (5) nominees by alternately striking names until five (5) names remain. The side striking first shall be determined by lot. In the event a particular name appears on both lists, however, that name shall automatically be included in the permanent list of five (5) names and only four (4) additional names would be selected by striking, etc.

From the list of five (5) permanent nominees a single name shall be selected in the same manner as described above and he shall be considered as the Chairperson the next contract year to hear all matters to come before the Board. Such Arbitrator shall continue to serve in such position unless either party designates in writing to the other by the end of November of a contract year of intent to remove said impartial Arbitrator. After such request, another name

shall be selected from the remaining list of four (4) names in the manner described above, and so on by the end of each contract year.

The Board of Adjustment shall convene six (6) times each year, with four (4) of the Board of Adjustments being scheduled in conjunction with Quarterly Meetings. The Board shall have the authority to issue decisions immediately upon hearing all evidence presented. If for any reason the Board requires additional time to deliberate on the matters presented, the Board may, by majority vote, grant an extension of time in issuing a decision for whatever period deemed appropriate by the Board members. After presentation of issues, a simple majority vote is required to dispose of items on the agenda.

All grievances arising out of the interpretation or application of any of the terms or conditions of this Agreement, which have not been resolved in accordance with Article VI, Settlement of Disputes, shall be submitted for determination and shall be determined by the Board of Adjustment Procedure. Neither the Board nor the Chairperson, in determining any grievance or dispute shall have the power to add to, subtract from, modify, alter or change any of the terms of this Agreement or any other terms made supplemental hereto, or to arbitrate any matter not specifically provided for in this Agreement or arbitrate any new provision into this Agreement. The Board's authority is to interpret and apply provisions of the Agreement. The Board shall be bound entirely by the records presented to it in the form of evidence and argument.

Except as provided in this Agreement, in no event shall the Company be penalized or in any way liable for monetary damages prior to ninety (90) calendar days preceding the submission of the grievance to management, but in no event prior to the event giving rise to the grievance.

It is understood and agreed that the procedures outlined in the Grievance and Arbitration Article of this Agreement shall be the exclusive remedy for any alleged violation of this Agreement.

Each decision of the Board or the Chairperson shall be made in writing with a copy of each decision sent to the Union and the Company. The determinations of the Board are final and binding upon all the parties. There shall be no appeal of a decision rendered by this forum by either party.

The procedural rules are set forth in the Costco/Teamster Board of Adjustment Procedure and may be reviewed and revised by the mutual written agreement between the parties.

The Board shall have the authority to order or deny reinstatement of an employee with or without back pay in whole or in part. In the event there is an award of any back pay, any earnings by the employee and any Unemployment Compensation Insurance collected by the employee during their period of unemployment shall be offset and deducted from this award. The Union agrees to cooperate in determining the earnings of the employee while unemployed.

The grievant(s) shall be made whole within thirty (30) calendar days from the date of settlement or Board of Adjustment decision, unless otherwise mutually agreed.

**Step 4: Arbitration**

(a) It is agreed by the parties that not all instances can be resolved by the Board of Adjustment Procedure. In these issues, it is agreed that by mutual written agreement the parties may proceed directly to arbitration.

Within five (5) calendar days after receipt of the written demand for arbitration, referred to in Step 2, the parties shall select an impartial Arbitrator; and if they are unable to agree upon their selection, the Union shall forthwith request the Federal Mediation and Conciliation Service (FMCS) to submit a list of nine (9) disinterested persons within the geographical region qualified and willing to act as impartial Arbitrators and simultaneously mail a copy of such request to the Employer. From this list, within two (2) calendar days after receipt thereof, excluding weekends and holidays, the Employer and the Union shall each alternately strike one (1) name until six (6) names have been eliminated: and the person whose name

remains shall be selected impartial Arbitrator. The parties shall draw lots to determine who shall make the first deletion from the list.

**(b)** The parties may continue to meet as often as required prior to going to arbitration in an effort to resolve the grievance.

**(c)** **Award**
The Arbitrator shall hear the submitted grievance as expeditiously as possible and shall render an award within thirty (30) calendar days after conclusion of the last hearing.

**(d)** **Final and Binding**
The award shall be final and binding upon all parties per sub-section (a) of this Article.

**(e)** **Limitations on Arbitrator**
The Arbitrator shall have no power to:

1. Alter, change, modify, or add to or subtract from this Agreement or any provisions thereof;

2. Determine any dispute arising out of the interpretation or application of Section (a) of this Article;

3. Determine any provisions to be incorporated in a new Agreement or an extension or renewal of this Agreement;

4. Impose on either party hereto a limitation or obligation not set forth in an express provision of this Agreement.

5. The Arbitrator shall have the authority to order or deny reinstatement of an employee with or without back pay in whole or in part. In the event there is an award of any back pay, any earnings by the employee and any Unemployment Compensation Insurance collected by the employee during their period of

unemployment shall be offset and deducted from this award. The Union agrees to cooperate in determining the earnings of the employee while unemployed.

**(f)     Expenses**

The expenses of the Arbitrator and reporter or the cost of the FMCS Arbitrator list shall be borne equally by the Employer and the Union. Any other expenses shall be paid for by the party incurring them.

**(g)     Time Limits**

A grievance which is not brought forward within the time limit provided within each of the sections herein shall be deemed waived. All time limits provided in this Article may be extended by mutual agreement of the parties.

**(h)     Monetary Awards**

Any pay awarded from Grievances other than Board of Adjustment or Arbitration decisions will be paid no later than the following pay period. Monetary awards issued from a Board of Adjustment or Arbitration shall be paid to the Awardee(s) within thirty (30) days of the issuance of such Board or Arbitration decision.

## ARTICLE VII - UNION REPRESENTATIVES/SHOP STEWARDS

**(a)     Visits**

It is the general policy of the Union to have its Representatives refrain from visiting the warehouses or offices during their busiest hours or days, such as days before holidays, weekends, or closing days. However, this policy may be waived in case of emergency.

Upon receipt of reported violations, the Union Representative shall have the right of visiting such warehouse or office for the purpose of investigating such violations, provided that such visits shall be so conducted and at such time as not to interfere with the conduct of business at such warehouse or office. It is further agreed that Union Representatives and the employees shall not engage in Union activities during working hours.

**(f)** <u>Seniority List</u>

The Employer must furnish the Union with a new seniority list on February 1st and August 1st of each year and at the same time post in each location's lunchroom a seniority list for that location by classification.

## ARTICLE XXXIII – RENEGOTIATION

The Employer and the Union agree that in the event any provision or provisions are so declared to be in conflict with the law, both parties shall meet within thirty (30) days thereafter for the purpose of renegotiating the provisions so invalidated. The remainder of the Agreement shall remain in full force and effect.

## ARTICLE XXXIV – DURATION

This Agreement shall be in full force and effect for the period to and until February 1, 2019 and thereafter from year to year, unless terminated by either party as hereinafter provided, sixty (60) days prior through February 1, 2019, either party may notify the other party in writing of its desire to cancel the existing Agreement or to negotiate a new Agreement.

## ARTICLE XXXV - MANAGEMENT RIGHTS

The Management of the Employer's operation and the direction of the employees are vested solely and exclusively in the Employer and shall not in any way be abridged except as specifically restricted by the express terms set forth in this Agreement.

The Employer shall have the right to designate where and in what manner the work of employees shall be done, including the right to direct employees to do work for any other person, provided that such work by employees shall be under the terms and conditions herein, including the wages and hours as herein provided and shall be the kind and type of work generally performed by employee pursuant to the provisions herein, including going to and from any other place of business at the request of the Employer, and shall be paid for by the Employer in accordance with the terms of the Agreement.

## ARTICLE XXXVI - SUCCESSOR

This Agreement as to wages, hours and working conditions, is entered into and shall be binding on both parties, their successors and assigns, from the date hereof until terminated as provided herein.

In Witness whereof, the Parties hereto have executed this Agreement this _26_ day of _October_ 2016.

**FOR THE EMPLOYER:**

Patrick Callans, Senior Vice President
Human Resources

_10/17/16_
Brenda Weber, Assistant Vice President
Human Resources

_10/17/16_
Richard Arriola
Labor Relations Manager

_10/17/16_
Fletcher Evans
Labor Relations

**FOR THE UNION:**

Rome Aloise, Chairman / Vice President
International Brotherhood of Teamsters

_10/17/16_
Mike Bergen, Co-Chairperson
Secretary Treasurer Teamsters #166

_10/17/16_
Jaime Vasquez, Co-Chairperson
Secretary Treasurer Teamsters #542

Mario Contreras
Secretary Treasurer Teamsters #150

Rick Middleton
Secretary Treasurer Teamsters #572

Cliff Batham
Business Representative Teamsters #986

# COMPANY RULES AND REGULATIONS

*The below information is provided for informational purposes only and is not intended to be subject to Collective Bargaining.*

## MINOR OFFENSES

The following are examples of offenses, which are normally cause for disciplinary action: Verbal Warning, Written Warning. It is also possible; if the offense is serious, enough, that discharge could occur.

**VIOLATION OF ANY OF THE FOLLOWING MAY BE CONSIDERED CAUSE FOR DISCIPLINARY ACTION OR DISCHARGE, DEPENDING OF THE SERIOUSNESS OF THE VIOLATION:**

1. Repeated tardiness or absenteeism, even though reported

2. Soliciting or collecting contributions for any purpose during actual working hours without permission of your supervisor or manager

3. Unsatisfactory work performance: not meeting Company requirements on quality, accuracy, quantity of general work performance

4. Presenting the Company with a personal check which cannot be cashed by the Company due to insufficient funds, closing of account, etc.

5. Repeated garnishments, attachments, or other creditors actions

6. Participation in a business enterprise in direct competition with the Company's operations

7. Loafing or other abuse of time during working hours

8. Interfering with any employee's performance of duties by talking or other distractions

9. Any act or conduct which might endanger the safety of others

10. Failure to report an injury or accident immediately

11. Use of unauthorized parking areas, warehouse entrances and exits

12. Malicious gossip or derogatory attacks on fellow employees

13. Making unnecessary noise or demonstration which might cause a disturbance

14. Smoking in an unauthorized area, or at times not permitted

15. Distributing or posting written or printed matter of any description at any time in the working areas of Company premises without written permission

16. Violations of Company Policy or Procedure which have been given to the employee, posted, or read to the employee

17. Defacing Bulletin Boards or notices posted thereon

18. Any action which is detrimental to the orderly conduct of the business

19. Excessive failure to consistently or accurately swipe in or out at beginning and at end of shift, at beginning and at end of meal period, including swiping in early from your meal period. (Three (3) separate failures to swipe consistently or accurately in a thirty (30) day period is considered excessive.)

20. Failure to begin your meal period no later than the end of the 5th hour of work.


**THIS LIST IS NOT INTENDED TO BE ALL INCLUSIVE**

**MAJOR OFFENSES**

The following are examples of what may be termed Major Offenses. These are willful and/or deliberate violations of safety rules or Company rules to such a degree that continued employment is not desirable. Discharge will be the normal action taken. However, a written warning or a disciplinary suspension could be used if there are mitigating circumstances, such as a long service employee with an excellent previous record.

**VIOLATION OF ANY OF THE FOLLOWING MAY BE CONSIDERED CAUSE FOR IMMEDIATE DISCHARGE:**

1. Acts of dishonesty towards the Company, customers, fellow-employees, or organizations servicing the Company (Add: including but not limited to grazing. Grazing includes, but is not limited to shelf stock, RTV merchandise (including merchandise being destroyed for credit) merchandise returned at membership, and any packages that become opened by either members during the course of the day or damaged while merchandising (i.e., blade cut, defective seams, etc.) Also included are Food Court and Fresh food products and any ingredients used in their preparation.)

2. Willfully falsifying any records, including employment applications or bond applications

3. Marking the time sheet of another or falsifying a time card or time sheet, or failure to conform to scheduled rest periods or lunch periods

4. Leaving the Company premises during working hours without permission of a Supervisor

5. Deliberately abusing, destroying, damaging, or defacing Company property, equipment, merchandise, or the property of others on Company premises

6. Creating or contributing to unsanitary or immoral conditions

7. Removal from office or warehouse of any Company merchandise or Company property unless paid for, or with the signed authorization from Management

8. Fighting or striking, or attempting to strike, or otherwise injuring another on Company premises (any employee directly involved)

9. Bringing liquor, narcotics or dangerous drugs into the Company premises or consuming liquor or using narcotics or dangerous drugs on Company premises or reporting for duty under the influence of liquor, narcotics or dangerous drugs

10. Carrying firearms or other dangerous weapons on Company premises

11. Gambling, in any form, on Company premises

12. Failure to return to work on expiration of vacation or leave, or after release by a doctor

13. Insubordination –willful refusal to follow instructions of a supervisor

14. Absence from work without authorized leave (unless due to a bona fide illness supported by a doctor's certificate)

15. Conviction for a violation of any criminal law

16. Failure to strictly follow the required cashier check stand and receiving procedures or other similar policies and procedures established by the Company

17. Going into restricted areas without authorization, or unauthorized presence on Company property outside of regular warehouse hours

18. Misusing or removing from the premises without written authorization, Company tools, equipment, employee lists, Company records, or confidential information of any nature

19. Willful, deliberate or repeated violations of safety, fire, or sanitary regulations

20. Accepting gratuities (gifts, presents, money, trips, etc.) from vendors, suppliers, customers, etc.

21. Violation of Company Policy prohibiting harassment or discrimination towards co-workers, vendors, members including, but not limited to sexual harassment and/or discrimination

22. No Call/No Show-Failure to report or call in within two hours of the start of a shift

23. Failure to produce and/or maintain required licenses and/or proper work authorization.

24. Failure to fully cooperate in a Company investigation.

25. Rude or insolent conduct toward customers

26. Use of profane, abusive or threatening language toward fellow employees, Company officials, or customers


## THIS LIST IS NOT INTENDED TO BE ALL INCLUSIVE

# EXHIBIT B



# **Grievance Report**

**TEAMSTERS UNION LOCAL 542**
SAN DIEGO & IMPERIAL COUNTIES
4666 MISSION GORGE PLACE
SAN DIEGO, CA 92120-4173
619-582-0542 · FAX 619-582-0059

N⁰ 23470

**EL CENTRO OFFICE:**
2298 MERRILL CENTER DRIVE
EL CENTRO, CA 92243
760-352-6571 · FAX 760-352-6599

## Failure to complete grievance form may result in delay and/or denial of grievance.

MEMBER'S NAME _James Diaz_                     DATE _11-16-17_

MEMBER'S ADDRESS _Redacted_                    HOME PHONE _____

CITY _San Marcos_  STATE _CA_ ZIP _92069_   CELL PHONE _Redacted_

NAME OF COMPANY _Costco Wholesale_          DATE OF HIRE _05-17-07_

ADDRESS _951 Palomar Airport Rd._ CITY _Carlsbad_  STATE _CA_ ZIP _92011_

JOB CLASSIFICATION _Forklift Driver_          RATE OF PAY _____

NAME OF SUPERVISOR _Brendon McPhee_       DATE GRIEVANCE OCCURRED _____

NAME OF STEWARD _Mike West_                PHONE NO. _(619) 582-0542_

NAME & PHONE NUMBERS OF WITNESS(ES) _____

ARTICLE AND/OR SECTION OF CONTRACT VIOLATED: _Article 4 and all that may apply_

TYPE OF GRIEVANCE: ☒ DISCHARGE ☐ SUSPENSION ☐ OTHER _____
EXPLAIN GRIEVANCE IN DETAIL, USE ADDITIONAL PAGE AND ATTACH IF NEEDED:
_Unjust termination._

RELIEF REQUESTED: _Go back to work_

MEMBER SIGNATURE _[signature]_       DATE _11·16·17_ AGENT _____

STEP (1) DISCUSSED GRIEVANCE WITH SUPERVISOR, DATE _____

STEP (2) IF UNRESOLVED, SUBMIT TO BUSINESS AGENT, DATE _____

COMPANY REPLY: _We have reviewed the circumstances surrounding the termination of the grievant and our position has not changed. Grievance Denied._

COMPANY REPRESENTATIVE SIGNATURE _[signature]_

RECORD OF ACTION BY UNION _____

_____ DATE _____

WHITE – COMPANY COPY  CANARY – UNION COPY  PINK – MEMBERS

# EXHIBIT C


RECEIVED
MAY 2 1 2012

## COSTCO/TEAMSTERS

### BOARD OF ADJUSTMENT PROCEDURES

The Board of Adjustment Policies and Procedures contained herein are developed pursuant to Article VI, Step 2(c) of the Collective Bargaining Agreement between Costco and California Teamsters Union.

## I. SCHEDULING

A. Prior to being appealed to a Board of Adjustment, grievances must be timely filed and appealed, and have completed Article VI, Steps 2(a) and 2(b) of the Collective Bargaining Agreement.

B. The Board of Adjustment Secretary will alternate on a yearly basis between the Union and the Company. All grievances appealed to a Board of Adjustment shall be submitted to the Secretary for scheduling. Such appeals must be received by the Secretary within the time limits stipulated in the Collective Bargaining Agreement with a copy to the appropriate Warehouse Manager. Upon receipt of the appeal, the Secretary shall add the grievance to the Agenda of the next Board of Adjustment.

C. Board of Adjustment shall be scheduled on a monthly basis. The schedule may be adjusted by mutual consent of the Company and the Union. The Secretary must receive all grievances appealed to a Board of Adjustment fifteen (15) days prior to the scheduled date of the Board of Adjustment. A full Agenda for the Board of Adjustment will be prepared and distributed to all Teamster Local Unions, Company Management, and the Impartial Arbitrator no later than seven (7) calendar days prior to the scheduled date of the Board of Adjustment. Every effort shall be made to schedule the Board of Adjustment at a location in the Region that is most convenient to all parties involved. Appendix A sets forth the specific Board of Adjustment schedule.

D. Each grievance shall be heard in the order as per the date received by the Secretary and published in the Agenda. All termination cases shall be given priority on the published schedule and shall be heard first. Remaining grievances shall be scheduled in the order of the date that the grievance appeals were received by the Secretary, with the oldest scheduled grievance appeals being given priority.

E. Either party may request and be granted one (1) postponement of a scheduled Board of Adjustment. Such Board of Adjustment must be rescheduled at the time of the postponement wherever possible. Postponed appealed grievances shall be rescheduled for the next scheduled Board of Adjustment and shall be placed behind appealed grievances scheduled but not heard at the previous months Board of Adjustment, and ahead of the most recent scheduled appealed grievances. No further postponements may be authorized without mutual written agreement of the Company and the Union.

## II. PANEL ASSIGNMENTS

A.

1. The Company Panel Members must be employed as a full-time regular Management employees of Costco and not assigned to the Warehouse or Location from which the grievance was raised.

2. The Union Panel Members must be a Secretary-Treasurer or Business Representative of the California Teamsters Union and not be assigned to the Local Union from which the grievance was raised. The Union Panel Member must be a California Teamster Representative whose personal responsibility includes at least one (1) Costco.

3. Both parties shall designate a permanent Panel Member (Recording Secretary) to sit on the Board of Adjustment for the purpose of expediting the hearing and maintaining consistency in rulings.

3. The Impartial Arbitrator shall be selected by the Company and the Union and shall serve in such position for a minimum of six (6) months and shall continue in such position unless after six (6) months, either party designates, in writing, to the other of intent to remove said Impartial Arbitrator.

4. The Secretary shall be notified of the Impartial Arbitrator, the Union, and the Company Panel Members no later than five (5) calendar days prior to scheduled Board of Adjustment. The Company and Union's shall provide two (2) Representatives each Panel session to sit as Panel Members of the Board of Adjustment.

B. Panel Members must be totally unbiased in their conduct at the hearing and be fair and consistent in its treatment of all parties. The Panel Members are charged with the responsibility of reviewing each case based on the merits of that specific grievance. The Panel Members shall consider each case separately, fairly without bias and based solely on the evidence presented.

C. The Company and the Union Representatives will present each case at the Board of Adjustment. Each Representative must be a full-time employee of the Company or the Union. Outside legal counsel or attorneys who are, not full-time regular employees of Costco or the California Teamsters Local Unions are prohibited from participating in the Board of Adjustment.

D. The Company or the Union may designate "co-counsel" in the presentation of a specific case. The provisions of Section II, C. above, limit such "co-counsel".

E. A Recording Secretary shall be designated from the sitting Panel Members on an alternating case-by-case basis. The Chairman position shall be designated to the Impartial Arbitrator. The same Impartial Arbitrator, as Chairman is responsible for the

conduct of the hearing. The Chairman shall make initial rulings, as required, on the introduction of exhibits, formal objections, etc. Panel Members may offer on opinion to the Chairman prior to the ruling, but the Chairman's ruling will be considered final and binding. The Recording Secretary shall make a record of all documents presented to the Panel and all procedural rulings made by the Chairman.

F.   The Panel shall have no greater authority then that granted an Arbitrator pursuant to Article VI of the Collective Bargaining Agreement.

## III. PROCEDURES

A.   Ten (10) days prior to the Board of Adjustment, the Company and the Union shall provide each other with all documents that are known to the parties and will be presented at the Board of Adjustment and a list of all witnesses who will be present at the hearing and the reason for their appearance. Evidence that is discovered at a later date may be introduced at the hearing if the party discovering the evidence gives the other party written notice of its existence at least five (5) working days prior to the Panel. Failure to provide or exchange evidence may prohibit its admission at the hearing. Both parties agree to limit documentation and testimony to only information relevant to the case. Either party may object to documentation or testimony based on relevancy. Both parties pledge not to unnecessarily burden or lengthen the hearing with information not relevant to the case. The Chairman shall have the final decision regarding such matters.

B.   When necessary, documentary evidence may be marked as Joint, Company, or Union Exhibits for ease of identification during the hearing. Such formality may not be necessary in cases not involving numerous Exhibits.

C.   The Board of Adjustment Appeal (Appendix A), the original grievance, and relevant correspondence shall be presented to the Panel and serve as a Statement of the Issue.

D.   The Company shall have the burden of proof in discharge and discipline cases. The following will be the order of presentation:

1.   The Company presents direct case.
2.   The Union may cross-examine.
3.   The Union presents direct case.
4.   The Company may cross-examine.
5.   Company presents rebuttal argument.
6.   Union presents rebuttal argument.
7.   Final questions from the Panel.
8.   Grievant's opportunity to provide any additional information not already addressed.
9.   Executive Session.

E.   The Union shall have the burden of proof in cases involving the application of the Collective Bargaining Agreement. The following will be the order of presentation:

1. The Union presents direct case.
2. The Company may cross-examine
3. The Company presents direct case.
4. The Union may cross-examine
5. Union presents rebuttal argument.
6. Company presents rebuttal argument.
7. Final questions from the Panel.
8. Grievant's opportunity to provide any additional information not already addressed.
9. Executive Session.

F. The above presentation order is not intended to restrict the Panel Members, Union or Company Representatives from requesting clarification of the testimony of witnesses.

G. The Union and the Company is encouraged to limit the attendance to each Board of Adjustment to the individuals who will either testify or have direct involvement or interest in the case. Although observers are discouraged, they may be present by mutual agreement of the Company and the Union and are so designated as non-participants in the hearing.

## IV. EXECUTIVE SESSION

A. The Panel Members are charged with the responsibility to jointly review and discuss all facts presented at the hearing and render an unbiased decision.

B. At the conclusions of the deliberations, the Panel shall reconvene the Hearing and render its decision to the parties. The Chairman shall complete, and all Panel Members sign the Board of Adjustment Decision. A copy of the completed Board of Adjustment form shall be provided to both parties and Local #542, (The keeper of the records), along with copies of documentation pertaining to the case.

C. Binding decisions will be determined by a majority vote of the Panel Members. If the Panel Members cannot obtain a majority decision among themselves, the Panel may declare itself "Deadlocked". Then and only then will the tie breaking decision be rendered by the Chairman (Impartial Arbitrator), as a bench decision. Said decision shall be final and binding by all parties. The Chairman's (Impartial Arbitrator) decision shall be provided to both parties and Local #542, (The keeper of the records), along with copies of documentation pertaining to the case.

## V. COST AND EXPENSES OF THE IMPARTIAL ARBITRATOR

A. If one (1) case or more is heard that day, the Company and the Local Unions involved shall split the entire cost of the Impartial Arbitrator for that day plus expenses.

B. If cases are scheduled and there are postponements and no cases are heard that day, the party requesting the postponement shall incur the cost of the Impartial Arbitrator for that day.

C.  If the scheduled cases are cancelled within seven (7) business days, the party that is
canceling the Board of Adjustment Hearings shall incur the full cost of the Impartial
Arbitrator for that day.

## VI.  POLICES AND PROCEDURES REVISION/AMENDMENT

A.  These policies and procedures may be revised or amended as necessary by the mutual
written agreement of Costco Labor Relations and California Teamsters Union Co-
Chairmen.

Said Policy agreed and revised this _____ date of _____, 2012.

For Costco:

Mike Mosteller

Jack Stephens

Richard Arriola

For California Teamsters Union:

Mike Bergen #166

Jaime Vasquez #542

Rome Aloise #853

# EXHIBIT D

---------- Forwarded message ----------
From: <davearb@aol.com>
Date: Mon, May 21, 2018 at 4:13 PM
Subject: DIAZ
To: mwest@teamsters542.org, rarriola@costco.com, nicolem@teamsters542.org, chatham@teamsters986.org, dan@teamsterslocal166.org, fevans@costco.com

REDACTED

THE ABOVE NAMED GRIEVANT PREVAILS IN HIS GRIEVANCE. THE UNION'S ARGUMENTS AS TO DOUBLE JEOPARDY WERE CORRECT.   UNION REMEDY IS ADOPTED

SO THAT I CAN LOOK AT MYSELF IN THE MIRROR, MY RESIGNATION IS EFFECTIVE TODAY.

**DAVID B. HART**
**3597 TRIESTE DR**
**CARLSBAD, CALIFORNIA 92010-2840**
760-729-5391

1

CELL-760-217-0022
FAX-760-720-9478

2

# EXHIBIT E

---------- Forwarded message ----------
From: **Michael West** <mwest@teamsters542.org>
Date: Wed, May 23, 2018 at 4:12 AM
Subject: Re: DIAZ
To: "davearb@aol.com" <davearb@aol.com>
Cc: Fletcher Evans <fevans@costco.com>, Richard Arriola <rarriola@costco.com>, Cliff Batham <cbatham@teamsters986.org>

Dave,
I understand your position. Please scan a copy of your decision to myself, Labor Relations, and Cliff on the original decision document that was provided. Thank you for your service.

Best wishes,

Mike West
Business Agent
Teamsters Local 542

Redacted

1

Office: 619-582-0542 X-115
Cell: 619-977-9107

On May 21, 2018, at 4:13 PM, "davearb@aol.com" <davearb@aol.com> wrote:

**THE ABOVE NAMED GRIEVANT PREVAILS IN HIS GRIEVANCE. THE UNION'S ARGUMENTS AS TO DOUBLE JEOPARDY WERE CORRECT. UNION REMEDY IS ADOPTED**

**SO THAT I CAN LOOK AT MYSELF IN THE MIRROR, MY RESIGNATION IS EFFECTIVE TODAY.**

**DAVID B. HART**
**3597 TRIESTE DR**
**CARLSBAD, CALIFORNIA 92010-2840**
**760-729-5391**
**CELL-760-217-0022**
**FAX-760-720-9478**