UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| COSTCO WHOLESALE CORPORATION,<br><br>         Petitioner,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 542,<br><br>         Respondent. | Case No.: 18-CV-01953-AJB-BLM<br><br>**ORDER:**<br><br>**(1) DENYING COSTCO WHOLESALE CORPORATION'S MOTION TO VACATE ARBITRATION AWARD; AND**<br><br>**(2) GRANTING MOTION TO ENFORCE ARBITRATION AWARD BY INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 542**<br><br>(Doc. Nos. 2, 14, 17) |
|---|---|

  Presently before the Court are Petitioner Costco Wholesale Corporation's motion to vacate arbitration award, (Doc. No. 2), and Respondent International Brotherhood of Teamsters, Local No. 542's motion to enforce arbitration award, (Doc. Nos. 14, 17). Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for decision on the papers and without oral argument. For the reasons explained more fully below, the Court **DENIES** Petitioner's motion to vacate arbitration award and **GRANTS** Respondent's

1

motion to enforce arbitration award.

# BACKGROUND

The present action revolves around the termination of James Diaz, a forklift driver for Costco at the Carlsbad warehouse. (Doc. No. 2-1 at 7.) On November 5, 2017, Charles Harris, an employee at the Carlsbad warehouse, informed Keith Paget, a manager, that Harris had observed several employees conducting suspicious activities that appeared to be drug related. (*Id.*) Paget then informed Jesse Sanchez, another manager. (*Id.*) Paget and Sanchez reviewed the tapes from November 3 and 4, 2017. (*Id.* at 7–8.) On November 3, 2017, the tape revealed Diaz throwing another employee a small clear plastic bag containing a white substance. (*Id.* at 8.) On November 10, 2017, Paget and Sanchez interviewed two employees who admitted to doing cocaine on the job and buying cocaine from Diaz four to five times. (*Id.*) On the same day, Diaz was interviewed and denied all allegations of drug dealing and agreed to provide a written statement to that effect. (*Id.*) Paget then informed Diaz that the Carlsbad police were on their way to assist the investigation. (*Id.*) Diaz then proceeded to leave the premises. (*Id.*) Later, the police informed Paget that the white substance was in fact cocaine. (*Id.*)

On November 12, 2017, Diaz was placed on "a 3 day unpaid disciplinary suspension." (Doc. No. 2-1 at 9.) The Corrective Consultation stated: "James [Diaz] needs to understand the seriousness of this matter and the impact it has on the company. James is being placed on a 3 day unpaid disciplinary suspension. James will report to the Warehouse Manager on Thursday, 11/16/17 at 2:45 p.m. to discuss his future at Costco Wholesale." (*Id.*) The Corrective Consultation cited two violations of Collective Bargaining Agreement ("CBA"): Major Offense #9 "bringing liquor, narcotics, or dangerous drugs into the company premises or consuming liquor or dangerous drugs on company premises or reporting for duty under the influence of liquor, narcotics, or dangerous drug" and #24 "failure to fully cooperate in a company investigation." (*Id.*)

On November 16, 2017, Diaz was terminated by Costco for violation of Major Offenses #9 and #24. (*Id.*) On the same day, the Union filed a Grievance Report on behalf

2

of Diaz claiming unjust termination. (*Id.* at 10.) Arbitration was conducted on May 2, 2018 before the "Board of Adjustment" – two Union and two Costco representatives, plus panel arbitrator Dave Hart. (*Id.*) The Union argued that Diaz's termination was "double jeopardy" based on the language in Diaz's suspension notice. (*Id.*) Costco argued that the extremely serious nature of the underlying offenses, Diaz could not have had any expectation that a three-day suspension was the only discipline he would receive. (*Id.*)

The respective Costco and Union representatives on the Board of Adjustment split equally on the grievance so Arbitrator Hart was to make the decision. (*Id.* at 11.) On May 21, 2018, Hart sent an email that stated: "The above named grievant prevails in his grievance. The Union's arguments as to double jeopardy were correct. Union remedy is adopted. So that I can look at myself in the mirror, my resignation is effective today." (*Id.* at 5.) Costco requested that Arbitrator Hart email a copy of the completed Board of Adjustment Decision form. (*Id.*) Costco never received a copy. (*Id.*) The Board of Adjustment Decision states: "The panel has deadlocked, and has passed the determing [sic] vote to the Arbitrator for resolution." (Doc. No. 23 at 12.) Arbitrator Hart wrote on the form: "Double Jeopardy was proved by preponderance of evidence presented. Employee to be made whole." (*Id.*)

On August 22, 2018, Costco filed a petition to vacate the arbitration award. (Doc. No. 1.) On the same day, Costco filed the instant motion to vacate the arbitration award. (Doc. No. 2.) On September 14, 2018, Respondent filed the instant motion to enforce the arbitration award. (Doc. Nos. 14, 17.)

## **LEGAL STANDARD**

A district court's role in reviewing an arbitral award is limited. *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960). Indeed, "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Local Joint Exec. Bd. of Las Vegas v. Riverboat Casino, Inc.*, 817 F.2d 524, 526 (9th Cir. 1987) (citation omitted). An award will be upheld provided it "draws its essence from the collective bargaining agreement" and does not

"manifest an infidelity" to the agreement. *United Steelworkers of Am.*, 363 U.S. at 597. "[I]f, on its face, the award represents a plausible interpretation of the contract in the context of the parties' conduct, judicial inquiry ceases and the award must be affirmed." *Holly Sugar Corp. v. Distillery Union*, 412 F.2d 899, 903 (9th Cir. 1969).

There are several grounds for vacatur under both the LMRA and the Federal Arbitration Act ("FAA"). The grounds for vacatur under the LMRA are:

(1) The arbitrator's award does not "draw its essence" from the CBA;

(2) The arbitrator exceeds the boundaries of the issues submitted to him or her;

(3) The award is contrary to public policy.

*Int'l Union of Painters & Allied Trades, Drywall Tapers, Finishers & Allied Worksers, Local Union 1944 v. TNT Plastering & Stucco, LLP (2012-024)*, No. 13-00238, 2013 WL 6210636, at *3 (D. Haw. Nov. 27, 2013) (citing *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995); *McCabe Hamilton & Renny Co., Ltd. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO*, 624 F. Supp. 2d 1236, 1234–44 (D. Haw. 2008)). The grounds for vacatur under the FAA are:

(1) The award was procured by corruption, fraud, or undue means;

(2) There was evident partiality or corruption in the arbitrators, or either of them;

(3) The arbitrators are guilty of misconduct by refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* (citing 9 U.S.C. § 10(a)).

/ / /

/ / /

/ / /

Specifically, Section 9 of the FAA states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.

## **DISCUSSION**

Petitioner request that the Court vacate the arbitration award arguing that (1) that the award does not draw its essence from the CBA and the arbitrator exceed his authority by imposing the concept of "double jeopardy" as against the plain language of the CBA; (2) the arbitrator exceeded his authority by refusing to consider evidence at the hearing, issuing an "email award" instead of following the CBA's required procedure and by acting as a mediator and engaging in ex parte communications with the Union; (3) the award runs counter to public policy against drug dealing to employees in safety-sensitive positions; and (4) the award is fatally indefinite because the awarded remedy is unknown. (Doc. No. 2-1 at 11–15.) In opposition, Respondent opposes each of these points and asserts that the arbitration award should be enforced. (Doc. Nos. 23, 14, 17.)

After a careful review of the applicable law, the arguments proffered by both parties, and the exhibits, the Court agrees with Respondent that the award should be enforced.

A. The Arbitrator's Award Draws its Essence from the CBA

Petitioner argues that the arbitrator's decision does not draw its essence from the CBA because double jeopardy is not mentioned in the CBA, but rather an "imported concept." (Doc. No. 2-1 at 16.) However, Petitioner relies upon a First Circuit case where the court was reviewing a district court's entry of summary judgment regarding an

arbitration award utilizing a different standard than the Ninth Circuit's standard. *See Zayas v. Bacardi Corp.*, 524 F.3d 65, 68 (1st Cir. 2008). Further, the court held that double jeopardy would not apply in an investigatory suspension. *Id.* at 69. Respondent does not disagree that double jeopardy would not attach to an investigatory suspension. (Doc. No. 17 at14.) Here, it is clear from the CBA that there is a difference between investigatory suspensions and disciplinary suspensions. (*See generally* Doc. No. 16-7.) Costco labeled Diaz's suspension as a disciplinary suspension. Therefore, it is likely that Arbitrator Hart found that this is a disciplinary suspension rather than an investigatory suspension.

Thus, it appears that Petitioner is requesting the Court to reach a different conclusion from Arbitrator Hart that the suspension was investigatory. However, Arbitrator Hart's decision that the suspension was disciplinary rather than investigatory represents a plausible interpretation and the Court is not entitled to reweigh the merits of the grievance. *See Holly Sugar Corp.*, 412 F.2d at 903; *ASARCO LLC v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union, AFL-CIO, CLC*, 910 F.3d 485, 491–93 (9th Cir. 2018). Arbitrator Hart was permitted "to rely on a number of resources, including 'statutes, case decisions, principles of contract law, practices, assumptions, understandings, [and] the common law of the shop' in his effort to give meaning to the" CBA. *ASARCO LLC*, 910 F.3d at 492 (citations omitted). Accordingly, Arbitrator Hart was permitted to rely upon the concept of double jeopardy. Further, even if the Court could conceivably reach a different result, Arbitrator Hart's decision and award are given great deference. *See id.* Accordingly, the Court finds that Arbitrator Hart's application of double jeopardy does draw from the essence of the CBA and he did not exceed his authority in applying the concept of double jeopardy.

B. The Arbitrator did not Exceed his Authority

Petitioner contends that the Arbitrator exceeded his authority "in three additional contexts (1) his improper limitations on argument and evidence at the hearing, (2) engaging in post-hearing ex parte communications with Diaz and the Union and thereby tainting his independence, and (3) by failing to issue an award as required by the CBA." (Doc. No. 2-

1 at 17.)

Under 9 U.S.C. § 10(a)(3), a district court may vacate an arbitration award where an arbitrator refused "to hear evidence pertinent and material to the controversy." Under California Code of Civil Procedure section 1286.2(a)(5), Petitioner must show "substantial prejudice … by refusal of the arbitrato[r] to hear evidence material to the controversy." *See, e.g., Burlage v. Sup. Ct.*, 178 Cal. App. 4th 524 (Cal. Ct. App. 2009). Petitioner claims that Arbitrator Hart was improper in limiting evidence at the hearing to only evidence that related to double jeopardy. (Doc. No. 2-1 at 17.) Petitioner attempted to present evidence regarding the underlying offense, however, Arbitrator Hart refused to hear it. (*Id.*) The issue submitted to Arbitrator Hart was whether double jeopardy applied to this suspension and termination. It is unclear how evidence of Diaz's underlying offenses would be material to a procedural question. Further, Petitioner contends that it was prejudiced because Arbitrator Hart would not know what sections of the CBA would apply, however, it appears that Arbitrator Hart was aware that this was a disciplinary suspension. The Court does not find that Petitioner was prejudiced by the fact that Arbitrator Hart did not allow evidence at the hearing regarding the reason for Diaz's disciplinary suspension.

Petitioner asserts that "[e]x parte evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award." *Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1025 (9th Cir. 1991). However, Arbitrator Hart was not presented with ex parte evidence. It is undisputed that Arbitrator Hart engaged in ex parte communications with Respondent, but no new evidence was presented in those communications. Further, Petitioner has failed to allege how this communication regarding an unauthorized settlement offer to Diaz caused it any disadvantage. *See Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 7 Fed. Appx. 784, 788 (9th Cir. 2001). The Court agrees with the parties that this behavior is peculiar, however, it likely did not disadvantage Petitioner.

Next, Petitioner argues that Arbitrator Hart exceeded his authority by failing to issue

a written award. (Doc. No. 2-1 at 18.) However, Arbitrator Hart did issue a written award. First, Arbitrator Hart issued his award in his email and also completed the Board of Adjustment Decision. Accordingly, he did follow the procedure in the CBA. Even if Petitioner received the Board of Adjustment Decision late, it is unclear to the Court how this prejudiced Petitioner. Petitioner was aware of Arbitrator Hart's decision by the email. Since Petitioner was not prejudiced by the delay of the receival of the Board of Adjustment Decision and Arbitrator Hart did in fact follow the procedure, the Court does not believe this is grounds for vacating the arbitrator award.

### C. The Award does not run Counter to Public Policy

Petitioner contends that the Arbitrator's award runs counter to public policy because reinstating Diaz for criminal conduct of possessing cocaine is a violation of the strong public policy of safe operation of heavy equipment. (Doc. No. 2-1 at 18–19.) The Supreme Court has made it clear "that any such public policy must be 'explicit,' 'well defined,' and 'dominant.' It must be 'ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (citations omitted). "The party seeking to vacate the arbitration award bears the burden of showing that the award violates public policy." *Southern Cal. Gas Co. v. Utility Workers Union of America, Local 132, AFL-CIO*, 265 F.3d 787, 796 (9th Cir. 2001). Petitioner has failed to provide an "explicit," "well defined," and "dominant" public policy that the arbitrator has violated. Further, in *Eastern Associated Coal Corp.*, the Supreme Court held that reinstating an employee who had failed two drug tests was not against public policy. *Id.* at 468–69. Accordingly, the Court does not find that reinstating Diaz as an employee is against an "explicit," "well defined," and "dominant" public policy.

### D. The Award Remedy is Known

Lastly, Petitioner argues that the arbitrator's award should be vacated because the remedy is unknown. (Doc. No. 2-1 at 19.) However, Arbitrator Hart stated in his email, "Union remedy is adopted." (Doc. No. 23-15 at 3.) Further, the Board of Adjustment

8

Decision states, "relief being sought: returned to work and be made whole in every aspect." (Doc. No. 23-16 at 2.) The CBA also provides that "[t]he Arbitrator shall have the authority to order or deny reinstatement of an employee with or without back pay in whole or in part." (Doc. No. 23-7 at 13.) Since Petitioner now has the Board of Adjustment Decision as well as the email, the Court believes the remedy is known to Petitioner.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Petitioner's motion to vacate and accordingly, **GRANTS** Respondent's motion to enforce the arbitration award.

**IT IS SO ORDERED**.

Dated: March 28, 2019

Hon. Anthony J. Battaglia
United States District Judge